**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| JANE DOES I, II, and III, | : | | |
| | : | | |
| Plaintiffs, | : | Civil Action No.: | 02-2338 (RMU) |
| | : | | |
| v. | : | Document No.: | 66 |
| | : | | |
| DISTRICT OF COLUMBIA *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

<u>**MEMORANDUM OPINION**</u>

Gʀᴀɴᴛɪɴɢ ɪɴ Pᴀʀᴛ ᴀɴᴅ Dᴇɴʏɪɴɢ ɪɴ Pᴀʀᴛ ᴛʜᴇ Pʟᴀɪɴᴛɪꜰꜰs'
Mᴏᴛɪᴏɴ ꜰᴏʀ Aᴛᴛᴏʀɴᴇʏs' Fᴇᴇs ᴀɴᴅ Cᴏsᴛs

## I.  INTRODUCTION

The plaintiffs, female emergency medical technicians with the District of Columbia's

Fire and Emergency Medical Services Department ("FEMSD"), filed this action in 2002,

alleging sex discrimination and deprivation of constitutional rights.  The parties settled the suit

in September 2005 and, pursuant to the settlement agreement, the case is now before the court on

the plaintiffs' motion for attorneys' fees and costs.  Because the plaintiffs are prevailing parties

and because most (but not all) of the fees and costs requested are reasonable, the court grants in

part and denies in part the plaintiff's motion.

## II.  BACKGROUND

The plaintiffs are women who were hired as emergency medical technicians with the

FEMSD.  The plaintiffs allege that after the FEMSD hired them, they received letters from the

District of Columbia informing them that all female applicants had to take a pregnancy test.

Compl. ¶ 15.  The letter went on to inform them that, as a condition of employment, the

pregnancy test had to be negative.  *Id.*  During their new hire training program, the FEMSD also informed the plaintiffs that their employment could be terminated if they became pregnant during the first year of their employment.  *Id.* ¶ 18.  After the plaintiffs learned that they were pregnant, they terminated their pregnancies for fear of losing their jobs.  *Id.* ¶¶ 22-23.

"Following some extensive motion practice," and after the Department of Justice intervened, the District of Columbia made an offer of judgment to each of the three plaintiffs in the amount of $101,000.00 "plus reasonable attorneys' fees to be determined by the Court." Order (Sept. 6, 2005) at 4.  The plaintiffs now move the court to accept their attorneys' fees calculations.  The court now turns to the plaintiffs' motion.

## III.  ANALYSIS

### A.  Legal Standard for Attorneys' Fees

Federal Rule of Civil Procedure 54(d) requires a party seeking attorneys' fees and "related non-taxable expenses" to file a motion with the court.  FED. R. CIV. P. 54(d)(2)(A).  The motion "must specify the judgment and the statute, rule, or other grounds entitling the moving party to the award."  *Id.*  It must also state the amount or provide a fair amount of the award sought.  *Id.*; *see also Herbin v. Dist. of Columbia*, 2006 WL 890673, at *2 (D.D.C. Apr. 4, 2006).

Under 42 U.S.C. § 1988 and under Title VII of the Civil Rights Act of 1964, a district court may, in its discretion, award reasonable attorneys' fees to the prevailing party.  *Palmer v. Rice*, 2005 WL 1662130, at * 9 (D.D.C. July 11, 2005) (citing 42 U.S.C. § 2000e-5(k)); *Talley v. Dist. of Columbia*, 443 F. Supp. 2d 5, 7 (D.D.C. 2006).  A court's determination of the appropriate attorneys' fees, in other words, is based on a two-step inquiry.  First, the court must

determine whether the party seeking attorneys' fees is the prevailing party.  A prevailing party "is one who has been awarded some relief by a court." *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health and Human Res.*, 532 U.S. 598, 603 (2001).

Second, the court must determine whether the attorneys' fees sought are reasonable. "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  The plaintiff bears the burden of demonstrating that the number of hours spent on a particular task is reasonable. *Role Models Am., Inc v. Brownlee*, 353 F.3d 962, 970 (D.C. Cir. 2004).  The plaintiff's "supporting documentation must be of sufficient detail and probative value to enable a court to determine with a high degree of certainty that such hours were actually and reasonably expended." *Id.* (quoting *In re Olson*, 884 F.2d 1415, 1428 (D.C. Cir. 1989) (internal punctuation omitted); *see also Covington v. Dist. of Columbia*, 57 F.3d 1101, 1107 (D.C. Cir. 1995) (stating that "a fee applicant bears the burden of establishing entitlement to an award, documenting the appropriate hours, and justifying the reasonableness of the rates").  "To determine the number of 'hours reasonably expended,' the district court must exclude hours that are 'excessive, redundant, or otherwise unnecessary.'" *Palmer*, 2006 WL 1662130, at * 9 (citing *Hensley*, 461 U.S. at 434). With respect to the reasonable hourly rate, attorneys' fees in civil rights actions in this Circuit are reasonable if they conform to the *Laffey* Matrix[1] created by the United States Attorneys' Office.  *Covington*, 57 F.3d at 1109 (explaining that an attorneys' fees award is reasonable if it is calculated on the basis of rates prevailing in the community and that the *Laffey* matrix is evidence of prevailing market

---

[1]      The *Laffey* Matrix is "a schedule of charges based on years of experience."  *Herbin v. Dist. of Columbia*, 2006 WL 890673, at *4 (D.D.C. Apr. 4, 2006).

rates).

## B.  Most of the Fees Sought are Reasonable[2]

### 1.  The Reasonable Hourly Rate

Although the plaintiffs' attorneys charge rates below market rates, the plaintiffs argue

that the court should base its determination of the appropriate hourly rate on the *Laffey* Matrix.

Pls.' Mot. at 6.  Further, the plaintiffs argue that the court should base its determination of the

appropriate hourly rate on the current *Laffey* Matrix, rather than the *Laffey* Matrix that was in

effect at the time the attorneys completed the work for which they now seek compensation.  Pls.'

Mot. at 5-6.  The defendants object to an attorneys' fee award based on the current *Laffey*

Matrix.  Defs.' Opp'n at 8.

Attorneys who practice privately and for profit but charge "reduced rates reflecting non-

economic goals" are entitled to receive attorneys' fees based on the prevailing market rate.

*Save Our Cumberland Mountains, Inc. v. Hodel*, 857 F.2d 1516, 1524 (D.C. Cir. 1988)

(concluding that "Congress did not intend the private but public-spirited rate-cutting attorney to

be penalized for his public spiritedness by being paid on a lower scale than either his higher

priced fellow barrister from a more established firm or his salaried neighbor at a legal services

clinic").  In this case, the plaintiffs' attorneys charge "hourly rates that are below the market rate

for work associated with complex civil litigation."  Pls.' Mot. Ex. 1 ("Malone Decl.") ¶ 13.  For

example, the plaintiffs' attorneys charge between $150.00 to $175.00 per hour in matters of

employment law.  *Id.*  According to the plaintiffs' attorneys, the reduced rates "reflect [the

---

[2]        As a preliminary matter, the court notes that the defendants do not dispute that the
plaintiffs are prevailing parties.  Further, pursuant to the settlement agreement, the defendants agreed to
pay reasonable attorneys' fees as determined by this court.  Thus, the only task left for the court is to
determine the appropriate amount of attorneys' fees that the defendants must pay the plaintiffs.

firm's] decision to provide affordable legal services to working men and women in the District of Columbia and throughout the United States who cannot afford to pay market rates for such representation." *Id.* ¶ 14. According to the *Laffey* Matrix, the reasonable hourly rate for attorneys with the level of experience of the plaintiffs' lead counsel is $405.00. The defendants do not challenge the plaintiffs' assertion that their attorneys' rates reflect non-economic goals.[3] Thus, the court concludes that the plaintiffs' attorneys reduced rates reflect non-economic goals, and that the plaintiffs' attorneys are entitled to attorneys' fees based on the *Laffey* Matrix. *Save Our Cumberland Mountains, Inc.*, 857 F.2d at 1524.

The court's next inquiry turns on the issue of the appropriate *Laffey* Matrix. The plaintiffs argue that the court should base its award determination on the current *Laffey* Matrix, Pls.' Mot. at 6, while the defendants argue that the court should base its award determination on the *Laffey* Matrix prevailing at the time when the litigation was conducted, Defs.' Mot. at 8.

"[C]ompensation received several years after the services were rendered – as it frequently is in complex civil rights litigation – is not equivalent to the same dollar amount received reasonably promptly as the legal services are performed, as would normally be the case with private billings." *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 283 (1989). That is, "to roughly compensate for delay in payment, a district court has the authority to award current market rates instead of historic market rates, so long as the use of current instead of historic rates would not overcompensate counsel, 'generating a windfall for the plaintiff's attorneys.'" *Covington v. Dist. of Columbia*, 839 F. Supp. 2d 894, 902 (D.D.C. 1993), *aff'd*, 57 F.3d 1101 (D.C. Cir. 1995); *see also Murray v. Weinberger*, 741 F.2d 1423, 1433 (D.C. Cir. 1984). In this

---

[3]    Indeed, the defendants do not object to the plaintiffs' arguments that they are entitled to attorneys' fees based on hourly rates higher than those actually charged by their attorneys.

case, the plaintiffs' attorneys' work on this matter began in September 2001.  Pls.' Mot. Ex. 2

("Attorney Time Records") at 1.  The case did not settle until almost exactly four years later.

Pls.' Mot. at 2.  Because "an appropriate adjustment for delay in payment – whether by the

application of current rather than historic hourly rates or otherwise – is within the contemplation

of [§ 1988]," *Jenkins by Agvei*, 491 U.S. at 283-284, the court concludes that the reasonable

hourly fees in this case are the hourly fees established in the 2005 *Laffey* Matrix.

### 2.  The Number of Hours Reasonably Expended on the Litigation

The plaintiffs seek reimbursement for 625.75 hours of attorney work totaling

$194,656.30 in attorneys' fees and $5,288.40 in costs.  Pls.' Mot. at 4.  The defendants argue that

625.75 hours are unreasonable because the "plaintiffs needed to do no factual investigation, only

attended two Rule 16 meetings, and appeared in Court exactly once."  Defs.' Opp'n at 1.

Specifically, the defendants make the following objections to the requested fee award: (a) the

plaintiffs' attorneys' practice of billing in quarter-hour increments inflates the total number of

hours; (b) the plaintiffs should not be reimbursed for the hours spent on legal work related to

claims against co-defendant Robinson; (c) some of the charges – particularly the charges for

research and for meetings and telephone conferences – are not sufficiently detailed or the entries

"lump[] tasks together without specifying the time spent on each;" and (d) the plaintiffs are not

entitled to costs.  Defs.' Opp'n at 6, 9.  The court addresses each of these arguments in turn

below.

### a.  Billing in Quarter-Hour Increments

The plaintiffs' law firm bills clients in "quarterly hour increments."  Malone Decl. ¶ 9.

According to the defendants, the plaintiffs' law firm's practice of billing in quarter-hour

increments overstates the total number of hours worked.  Defs.' Opp'n at 9.  While the D.C.

Circuit has not discussed the reasonableness of billing in quarter-hour increments, some district courts have reduced the requested fee awards when the attorneys billed in this fashion. *See, e.g.*, *Lopez v. S .F. Unified Sch. Dist.*, 385 F. Supp. 2d 981, 993 (N.D. Cal. 2005); *Mahtesian v. Snow*, 2004 WL 2889922, at * 9 (N.D. Cal. Dec. 14, 2004); *Zucker v. Occidental Petroleum Corp.*, 968 F. Supp. 1396, 1403 (C.D. Cal. 1997); *Miller v. Bowen*, 639 F. Supp. 832, 836 (E.D.N.C. 1986). Other district courts, however, have not reduced the requested fee awards where it is the regular practice of the law firm to bill in quarter-hour increments.[4] *See, e.g.*, *Branham v. Snow*, 2006 WL 1750443, at *5 (S.D. Ind. June 19, 2006); *Bd. of Educ. of Frederick County v. I.S. ex rel. Summers*, 358 F. Supp. 2d 462, 470 (D. Md. 2005); *Herrojon v. Appetizers And, Inc.*, 1999 WL 116598, at *3 (N.D. Ill. Feb. 22, 1999); *Morimanno v. Taco Bell*, 979 F. Supp. 791, 799 (N.D. Ind. 1997). Because the plaintiffs have already reduced their fee request by 154 hours, Malone Decl. ¶ 11, and because the plaintiffs' law firm bills all of its clients in quarter-hour increments, the court declines to reduce the requested fee award as a result of the law firm's practice of billing in quarter-hour increments.

### b. Reimbursement for Work on Claims Against Co-Defendant Robinson

The defendants argue that the plaintiffs should not receive attorneys' fees for the plaintiffs' attorneys' work on claims against co-defendant Robinson. Defs.' Opp'n at 10. Robinson was the Interim Chief of the FEMSD and, during the new hire training program, she

---

[4]     Taking a middle-of-the-road approach, the Eighth Circuit reviews the attorney time records for instances where one-quarter of an hour was billed for a meeting or telephone conference because "these are the most likely examples where overbilling may have occurred" and converts the charges into tenth-hour charges. *Republican Party of Minn. v. White*, --- F.3d ----, 2006 WL 1687468, at *3 (8th Cir. June 20, 2006). Because there are only a few instances where the plaintiffs' attorneys charged a quarter of an hour for a meeting or a telephone, the court does not adopt the Eighth Circuit approach here.

informed the plaintiffs that their employment could be terminated if they became pregnant in the

during the first year of their employment.  Compl. ¶¶ 7, 17-20.  The plaintiffs sued defendant

Robinson in her official capacity and individually for constitutional and common law torts.  Pls.'

Reply at 7.  In their exhibit to the opposition brief, the defendants object to paying attorneys'

fees for the legal work on claims against Robinson because the work on those claims did not

contribute to the plaintiffs' success on their claims against the District of Columbia.  Defs.'

Opp'n at 10-11.  "Where the plaintiff has failed to prevail on a claim that is distinct in all

respects from his successful claims, the hours spent on the unsuccessful claim should be

excluded in considering the amount of a reasonable fee."  *Hensley*, 461 U.S. at 440.  But,

"[w]here a lawsuit consists of related claims, a plaintiff who has won substantial relief should

not have his attorney's fee reduced simply because the district court did not adopt each

contention raised."  *Id.*  Here, the plaintiffs' claims against Robinson are related to their claims

against the District of Columbia because the claims against the District of Columbia and those

against Robinson have the same factual basis: Robinson's statements to the female trainees.

Further, the plaintiffs sued Robinson not only in her individual capacity, but in her official

capacity as well.  Thus, the plaintiffs' success on their claims against the District of Columbia is

also related to their success on the official capacity claims against defendant Robinson.   The

court accordingly declines to reduce the requested fee award by the time spent litigating claims

against defendant Robinson.

### c.  Adequacy of Detail

The defendants also argue that many of the plaintiffs' attorneys' research charges and the

charges for meetings and telephone conferences are vague and lump together multiple tasks, and

as such, do not allow the court to ascertain the reasonableness of the research.  Defs.' Opp'n at

11-13.  As stated *supra*, the plaintiffs bear the burden of establishing the reasonableness of their fee request.  *Role Models Am., Inc*, 353 F.3d at 970.  The plaintiffs' "supporting documentation must be of sufficient detail and probative value to enable a court to determine with a high degree of certainty that such hours were actually and reasonably expended."  *Id.* (internal punctuation omitted).

The plaintiffs' time records in the instant matter are, in many instances, lacking in adequate detail.  For example, many entries contain descriptions that state "research' or "research regarding causes of action" or "research for litigation case binder."  *See Role Models Am., Inc.*, 353 F.3d at 971 (holding that litigant could not recover attorneys' fees for generic time entries, such as "research" and "writing," because the court cannot verify the reasonableness of such billings).  Other entries "lump together multiple tasks, making it impossible to evaluate their reasonableness."  *Id.*  Finally, practically all of the entries for meetings and telephone conferences "are replete with instances where no mention is made of the subject matter of the meeting, telephone conference, or work performed during hours billed."  *In re Meese*, 907 F.2d 1192, 1204 (D.C. Cir. 1990).

Recognizing the inadequacy of their time records, the plaintiffs' reply brief includes a supplemental declaration providing greater detail.  The supplemental declaration, for example, explains the subject matter of the research, the subject matter discussed at many of the meeting and telephone conferences, and also describes the many instances in which the plaintiffs' law firm did not bill the clients for duplicative work.  *See generally* Pls.' Reply, Ex. 3 ("Supp. Malone Decl.").  The supplemental declaration provides enough information and detail to allow the court to ascertain the reasonableness of the fee request.  The court concludes that the research entries and the entries related to meetings and telephone conferences are reasonable.  The

research, for example, pertains to the issues prevalent in this case, such as the use of pseudonyms in discrimination cases, defenses to the District of Columbia's arguments, notice requirements, and damages issues. *Id.* ¶¶ 8-12, 19, 20, 25-29, 37-41, 50-52, 60. The meetings and conferences were also related to the subject matter of the litigation and include, *inter alia*, discussions with the Department of Justice, discussions about the settlement offers with the plaintiffs, and discussions with the defendants themselves, as well as with other team members. Supp. Malone Decl. ¶¶ 10, 14, 15, 17, 21-23, 31-35, 41-46, 48-50, 52-59. The court therefore concludes that the plaintiffs are entitled to attorneys' fees for the time they spent on research and in meetings and telephone conferences.[5]

The court, however, does reduce the plaintiffs' requested fee award because the number of partner hours spent on the matter compared to the number of associate hours is excessive. The partners in this matter spent 335.25 hours on this matter, while the associates, law clerk and paralegals spent a combined 290.50 hours on this matter. Because "a partner should be performing supervisory work," *Adolph Coors Co. v. Truck Ins. Exchange*, 383 F. Supp. 2d 93, 97 (D.D.C. 2005), the court will therefore reduce the number of compensable partner hours by half. Thus, the court reduces the time expended by Louis Malone from 226.75 hours to 113.75 hours. The court also reduces the time expended by Ellen Boardman and Richard Hopp from 99.75 hours to 49.875 hours and from 8.75 hours to 4.375 hours, respectively. Because the applicable hourly rate for Malone and Boardman is $405 and because the applicable hourly rate for Hopp is

---

[5]     The defendants also object to many of the entries because the plaintiffs "lump together" multiple tasks into one entry and do not break down the specific amount of time spent on each task. Defs.' Opp'n at 13. The plaintiffs' practice of block billing, while not a practice to be encouraged, does not prevent the court from making a determination as to whether the hours devoted to a particular task were reasonable. Indeed, the plaintiffs' supplemental declaration provides an adequate amount of detail to assist the court in its determination.

$360, the court reduces the total attorneys' fees request by $67,691.25.

### d.  Costs

Because the offer of judgment stated that the plaintiffs are entitled to "reasonable attorneys' fees,"[6] the defendants argue that the plaintiffs are not entitled to costs.  Defs.' Opp'n at 6.  Under Rule 68, however, a defendant making an offer of judgment must pay the plaintiffs' costs.  FED. R. CIV. P. 68 (stating that "a party defending against a claim may serve upon the adverse party an offer to allow judgment to be taken against the defending party for the money or property or to the effect specified in the offer, with costs then accrued").  The defendants made the offer of judgment "pursuant to Rule 68."  Because Rule 68 provides for costs, the defendants' offer of judgment need not explicitly state that the defendants will pay costs for the defendants to be liable for costs.[7]  *Greenwood v. Stevenson*, 88 F.R.D. 225, 230 (D. R.I. 1980) (explaining that "when contracting parties use terms of art, they will be deemed to have 'intended' the full legal meaning of those words"); *see also Gen. Ry. Signal Co. v. Wash. Metro. Area Transit Auth.*, 875 F.2d 320 (D.C. Cir. 1989) (interpreting legal terms of art in a contract according to their legal meaning).  Thus, the defendants must pay the plaintiffs both costs and reasonable attorneys' fees.

Having concluded that the defendants must pay the plaintiff costs, the court's next inquiry centers on the types of costs that the plaintiffs are entitled to receive.  The plaintiffs argue that they are entitled to costs for computerized legal research and for the private process

---

[6]      Under § 1988 and Title VII actions, attorneys' fees are recoverable as costs.  42 U.S.C. § 1988(b), 42 U.S.C. § 2000e-5(k).

[7]      Indeed, the defendants do not even argue that they believed the offer of judgment excluded costs.

servers.  For the reasons that follow, the court concludes that the plaintiffs are not entitled to recovery of these costs.

The terms costs as used in Rule 68 is synonymous with the costs in 29 U.S.C. § 1920.

*Gil de Rebollo v. Miami Heat Ass'ns, Inc.*, 137 F.3d 56, 66 (1st Cir. 1998).   The costs allowable under § 1920 include:

> (1) Fees of the clerk and marshal;
> (2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;
> (3) Fees and disbursements for printing and witnesses;
> (4) Fees for exemplification and copies of papers necessarily obtained for use in the case;
> (5) Docket fees under section 1923 of this title;
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

29 U.S.C. § 1920.

The plaintiffs seek reimbursement for private service of process costs and for the costs of computerized research.  Computerized research is not considered a cost pursuant to § 1920.

*Attrezzi, LLC v. Maytag Corp.*, 436 F.3d 32, 43 (1st Cir. 2006).[8]  The plaintiffs thus cannot recover the costs of computerized legal research.

The plaintiffs also seek reimbursement for the private process server.  Pls.' Reply at 18. The Second, Fifth, Sixth, Seventh, and Ninth Circuits interpret § 1920(1)'s phrase "fees of the clerk and marshal" to include private process servers' fees because the service of summonses and subpoenas is now done almost exclusively by private parties, rather than by the marshal.

*See*, *e.g.*, *Gaddis v. United States*, 381 F.3d 444, 456 (5th Cir. 2004); *Arrambide v. Wal-Mart*

---

[8]        Although Attrezzi holds that computer research costs may be shifted under § 1988, the parties' settlement agreement only provides for recovery of attorneys' fees and not any other costs under § 1988.

*Stores, Inc.*, 33 Fed. Appx. 199, 202-203 (6th Cir. 2002); *U.S. Equal Employment Opportunity Comm'n v. W & O, Inc.*, 213 F.3d 600, 624 (11th Cir. 2000); *Collins v. Gorman*, 96 F.3d 1057, 1060 (7th Cir. 1996); *U.S. for Use and Benefit of Evergreen Pipeline Const. Co., Inc. v. Merritt Meridian Const. Corp.*, 95 F.3d 153, 172 (2d Cir. 1996); *Alflex Corp. v. Underwriters Labs., Inc.*, 914 F.2d 175, 178 (9th Cir. 1990). The Eighth Circuit, on the other hand, construes the text of § 1920 literally. *Crues v. KFC Corp.*, 768 F.2d 230 (8th Cir. 1985). This Circuit's court of appeals "begin[s] as always, with the statute's language." *Friends of Earth, Inc. v. Env't Protection Agency*, 446 F.3d 140, 144-45 (D.C. Cir. 2006) (interpreting the word "daily" in a statute to mean every day, even where the agency implementing the statute argued that the literal interpretation of the term contravened the statute's purpose). The text of § 1920 only allows for recovery for "fees of the clerk and marshal." Because § 1920 does not provide for reimbursement of the costs of a private process server, the costs the plaintiffs seek to recover are not reimbursable under § 1920.

## IV.  CONCLUSION

For the foregoing reasons, the court grants in part and denies in part the plaintiffs' motion for attorneys' fees and costs. An order consistent with this Memorandum Opinion is issued the 5th day of September, 2006.

RICARDO M. URBINA
United States District Judge